Good morning, Your Honors. May it please the Court and Counsel, my name is David Partovy, here for Mr. Ruck. I'd like to briefly inform the Court that I received, on the date that I filed my objection to it, a 123-page supplement by the United States. It's been given to me as well today in a bound copy. Is there anything in that that wasn't in the District Court record? My understanding, and I don't actually have personal knowledge to answer that question, so my understanding is that all of this was a part of the sealed District Court record. So it's part of the record? Yes. It's part of the record. It's in front of us, so I'm not sure what the dispute's about. Well, I will say one thing about the dispute and then leave it to the Court, because I don't know that there's anything but that for me to do. I believe that the time for disclosure and reference to this record… No, no, no. Different question. If it's in the record, we can examine it. It's part of our record. Now, if something's not in the excerpts of record, we may not have physical possession of it, but it has no impact at all on our ability to examine it or its placement within our record. So, as I understand it, the government's simply saying, here's a physical copy, keep it under seal, because it was sealed in the District Court, but it's not adding anything to the District Court's record, in which case it's in front of us anyway. Fair enough. Okay. The primary focus of my position before this Court is that there was a misapplication of a couple of different guidelines and that the restitution amount simply lacks any factual basis. Mr. Ruck believes that the plea agreement was breached, and I'd ask the Court to consider that portion of his brief that addresses that. I really didn't understand his argument until I received that. I formatted it, put it before the Court, and that's all I'll say about that. Specifically, with regard to Sentencing Guideline Section 3B.1.3, the position of trust, as I mentioned in my brief, it was simply misapplied. Both the District Court and the United States, in their answering brief, analyzed the application of Section 3B.1.3 as though the U.S. Border Patrol were the victim. I think it's fairly clear in both the restitution documents and the record itself, generally, the pre-sentence investigation report as well is very specific, that the victim in the case was Elavon, the credit card. What does the victim, the identity of the victim, have to do with whether or not there was a position of trust? The position of trust has to be analyzed from the perspective of the victim. What case is that? They're cited in my brief. What's the strongest case to support the proposition that we must view the position of trust from the perspective of the victim? I would say the strongest case is probably, the language is the strongest in Garrison, which is an 11th Circuit case. Well, what about the 9th Circuit? The 9th Circuit, I would say, is Christiansen, 828 Fed 3rd, 763, specifically pages 817 through 818. Okay. Now, in that case, the guideline itself, 3B.1.3, when it talks about a position of trust, it specifically states relative to the victim. However, it also carves out in the language of the guideline, and this is a de novo review that, according to the case I've cited, that a position of trust is more than they use the example of a bank teller. And then to explain what a position of trust is, they specifically use examples of attorneys, doctors, people that hold special licenses, that have sort of special training, that kind of thing. So the Christiansen case that I mentioned, it's a guideline application, the guideline application was upheld because Mr. Christiansen was an attorney. And so that case is much more in line with the language of the guideline, but the language of the guideline says that you apply it relative to the victim. So counsel at the trial court level argued to the district court that really he was just swiping a credit card two or three times. And Elevon indemnified the U.S. Border Patrol pursuant to their agreement. So the Border Patrol didn't lose any money. Well, but that doesn't mean, I don't understand how that doesn't make the Border Patrol a victim. Suppose somebody burglarizes my house, takes stuff away, I'm a victim. Now, I may get reimbursed by the insurance company, so the ultimate financial hit may go to the insurance company. That doesn't make me any less of a victim. I've been burglarized. Well, I think that a burglary is a different scenario sufficient to take it outside. Why? The Border Patrol was out. It was able to get reimbursed because it could charge it back under the merchant agreement or whatever, but it was the Border Patrol whose pocket was picked. Well, I just respectfully disagree. And why would the sentencing guidelines want to draw a distinction like that? The point of it is a breach of trust. It's trust that they're concerned about, not whose pocket is ultimately emptied because of reimbursement through insurance or other means. So unless you're going to offer up something else, I just don't understand how you can say the government wasn't a victim here. Well, I think the case law is clear, but with regard to who the victim is, I also would submit that Mr. Rook was not in a position of trust within the meaning of 3B1.3 vis-à-vis the government either. Well, they gave him his credit. They gave him their credit card number and authorized him to use it on a recurring basis, and he authorized it like crazy. So isn't that being trusting? Do you ordinarily give out your credit card number and say charge when it's time to somebody that you don't have a relationship with? I do not, but the — And besides, the courts seem to be more concerned about special skills. That is, it viewed what Mr. Rook did as being sophisticated enough so that he should fall into that category. Well, you're right, but they were wrong. What special skill did he have? He was swiping a credit card and delivering fuel. He just did it too many times. It's a skill or a position that makes the crime more difficult to apprehend, and because there was no one overseeing or supervising him, the crime was easier to commit. What's your response to that? Well, I mean, because nobody was looking, I don't think rises to the level of a position of trust within the meaning of 3B1.3. If my credit card were repeatedly stolen from and I looked at the statement and saw it, it's not — my reading of the case law and the guideline do not have that rising to the level of a special skill or position of trust within the meaning of 3B1.3. Counsel, can I draw your attention to the case you cited as the one that most strongly supports your position, written by Judge Clifton, as a matter of fact? You trust that lowlife? He'll say anything. On page 816, under lower case C, second paragraph, the opinion says the court noted that Christensen did not hold the traditional position of trust with regard to the victims of the wiretapping, but concluded that in a real sense the legal community and the justice systems are victims of this crime. So although they were not traditional victims, what's your response to that language? I think that in our society it's really clear that lawyers are different. Okay. So you're making a distinction between lawyers and other defendants? The guideline makes that distinction specifically. It addresses lawyers and the case. Well, it gives lawyers as an example, but not exclusive, not exhaustively. No, but the other examples that it gives, like physicians, for example, these are professions where you take an oath, where you're required to engage in ongoing education, where you're required to be supervised by various boards or agencies. So it's just different, is my answer. All right. Thank you. Did you want to save any time for rebuttals? I will. Thank you. All right. We'll hear from the government. And before you start, introduce yourself. I'm sorry. Certainly. Good morning, Your Honor. Serena Case Hargrove, representing the United States. Before you began, counsel, I was just curious as to why the last-minute supplementation of the excerpts of record. Your Honor, I want to apologize for that. It wasn't until I took over the case and began searching the record that I found those documents. I believe that the second argument fails simply on the plain error standard, but because it alleged wrongdoing by the government, I was concerned and I wanted to get to the bottom of it. So I searched the record. And the reason I provided those documents, which are in the record to the court, is they were extremely difficult even for me to access. I had to call the clerk's office and get them to unseal a good number of them. And they just very clearly established that the government did not do anything wrong. The government was well aware of the Strategic Resources Group in January of 2016, well before that June 2016 proffer. So I recognize that I could have just cited the ECF numbers for the court, but those documents are hard to get. And I do have copies for each member of the panel. I can give them to the court clerk after the argument. Thank you, counsel, for the explanation. No problem. Your Honors, Judge Lodge did indeed rely on two alternative bases for that 3B1.3 enhancement, as Judge Clifton pointed out. The alternative basis that was not addressed in the blue brief at all was the special skill enhancement. And in the guidelines commentary, they don't just list fancy white collar folks who have nice degrees, doctors and lawyers. Tellingly, they also list a different example, and that's a demolition expert. Now that's someone who has a special skill, and they emphasize that it can come from training alone. So what's the special skill here? It doesn't really seem that sophisticated. Your Honor, Mr. Ruck had 10 years of experience working with government contracts. He had been employed by two different contracting agencies. He knew precisely how to manipulate the system and make those chargebacks in a way that were fairly difficult to detect. He also placed himself right in the middle between the credit card processor, Elevon, and the government. And the border patrol. So he knew how to blame different folks. He knew how the system worked. He even knew common problems that government contractors have processing credit cards. So he could blame those common problems on the double and triple charges. So his special skill was understanding the ins and outs of government contracting. The lingo, the details of it. He also had a great deal of knowledge about fuel, which was the specific area he was contracting in. So he could make very credible sounding allegations about how the fuel price had changed, so there was confusion, and so they had had to work things out, and so on. So yes, it's sort of an odd special skill. I have to grant that. But he'd spent 10 years mastering these details, and he used them artfully. Isn't this, though, just a criminal skill that, in the case United States v. Harper, they declined to respect that criminal skill, this sort of devising the way to overcome through experience? I think that was an ATM issue. But these procedures, from the perspective of criminality, seem not to have been recognized in this circuit as a special skill. And what would your response be to that? And I also would be interested in learning whether you believe counsel for the appellant has waived this argument, because it is not in the opening brief. It was just brought up, as I understand it, here in opening argument. Thank you, Your Honor. You're absolutely correct. And it was a focus of Judge Lodge's argument, but it was not raised in the blue brief. So I could focus on what was raised in the blue brief, because that fails as well, and that is the abuse of the position of trust. And in this case, first of all, in the Ninth Circuit there isn't the same requirement as there is apparently in the Eleventh Circuit about having that position run directly to the victim. The text, the plain language of the guideline does not include, and this is contrary to what opposing counsel said, it does not include any mention of the need for that trust to run directly to the victim. And Ninth Circuit precedent bears that out. Judge Clifton's decision, and Christensen's certainly does, that attorney did not represent the victim. He represented someone else. In addition, the Aubrey case, which was cited in the briefs, also shows that, because there was an intermediary between the general contractor, who was the defendant, and the tribe in the United States, but he had stepped into, the general contractor had stepped into the shoes of that intermediary. And really, that's what we have here. Mr. Ruck was stepping into the shoes of what seemed like a legitimate government contractor, government services. But it wasn't. He could never have run that company, because he was a felon. He wasn't allowed to be in charge of it. But he effectively was, with respect to the border control. So he had gotten himself into that position through deceit. And at the very end of the commentary to Section 3B1.3, the comment notes explain that when someone puts themselves in a position that appears to be one of trust, that is particularly, when there really shouldn't be, that is particularly egregious and merits additional punishment. So, Your Honor, there are two alternative bases, but the first basis, which was raised in the blue brief, is certainly sufficient for affirming on that first issue. If there are no further questions, Your Honor, the government will submit. Appears not. Rebuttal. Hey, please, the Court. I just want to touch on two points that I did not bring up previously. We submit that the heartland of this criminal activity was sufficiently covered in the guidelines, and so an upward departure under 5K2.0 was not warranted. I think that that's sufficiently laid out in the briefing. So the next thing I'd like the Court to consider is Mr. Rook's pretty substantial arguments for a breach of the plea agreement. Again, those are submitted in his briefing, which he wrote and I just formatted. But he's not authorized to file a brief. I filed it on his behalf. I didn't. But how many opening briefs is a party allowed? I mean, it's there, but I think it's even marked received by our Court. And unless there's a motion, I'm not sure that it's, well, whatever. In my opening brief, I, in passing, said, leave as requested to supplement. So that was the basis upon which I was doing that. But you can't supplement by incorporation. You can't supplement your brief by incorporating a different brief. Okay, well, he has an argument he wants to make. That's exactly it. I'm in a difficult position because I didn't understand his argument until I received it. It was late. He and I had been communicating via the CorLinks email system. I just submitted it. I'd ask you to review it. I'm sure it's discretionary. Finally, I just want to reiterate that there is no factual basis in the record whatsoever for over $100,000 worth of restitution. I think that's a strong issue. I know it's not Mr. Ruck's main focus, but it's a clear error standard. And with no factual basis whatsoever, and, I mean, there's none. There's none to the point that the government, in their answering brief, didn't even address it. They simply said it was reasonable. So with no factual basis at all, I think the court should order that the restitution amount be $105,702.99, which is the amount of conviction minus the recovery amount. Was there an objection to the restitution amount at sentencing? I see that my time has expired. Can I answer that question? No, there was not, which is why I'm suggesting it be a clear error standard. It would be plain error. That's what I think I mean, Your Honor. I also point out in the briefing that that's the standard anyhow. So whether he objected to it or not, it's the same standard. All right. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar, Hackney v. Oberlin, has been submitted on the briefs.
judges: Rawlinson, Clifton, Freudenthal